Case number 20-1181 et al. The Nasdaq Stock Market LLC et al. Petitioners versus Securities and Exchange Commission. Mr. Hungar for the petitioners, Ms. Hargan for the respondents. Good morning, counsel. Counsel for petitioners. Good morning, Your Honor, and may it please the court. As explained in the supplemental briefs, the governance order is final and reviewable by this court. The order should be set aside on three independent grounds. First, Congress was very specific in defining the authority granted to the commission under section 11A, A3B. Congress specified who the commission can direct to act. Excuse me, counsel. That's the merits of the case. Yes, Your Honor. The question is whether or not the commission's direction that they submit these proposals are final. You're talking about the merits. Why don't we talk about finale? Yes, Your Honor. As both parties have explained in the supplemental briefs, the order is final because it satisfies the requirements under Bennett v. Speer. First, the order marks the consummation of the agency's decision-making process. Let me ask you to focus. Every one of the commission's federal register statements say this is not final. Just take, for example, the latest, the January 15th order on whether to approve the proposed plan. Yes, Your Honor. The commission sought comment on a number of specifically highlighted issues, quote, including whether the proposals are consistent with section 11A, as well as any other concerns they may have with the proposal. Then it says, institution of proceedings does not indicate that the commission has reached any conclusions with respect to any of the issues involved. That says this isn't final. They say the same thing in every other federal register document. Your Honor, the commission's determination in the order under review here, with respect to the three issues that we are challenging, is unquestionably final. Would you just focus on what I just read you? I'm attempting to do that, Your Honor. Look at the language I'm focusing on. The SEC, including whether the proposals are consistent with section 11A, and the proposals include the forward issue here. Your Honor, the commission makes clear in the long list of specific questions in that order that what it's inviting comment on is not the three matters under review here, as to which its determination is already final, as it made very clear in the prior order, and as it confirmed in its brief filed last week. It is not inviting comment on those matters. It has ruled definitively on those issues. Those determinations are not tentative or interlocutory. What language are you focusing on there? I'm sorry? Which specific language are you focusing on there? I'm focusing on the express determinations in the order under review that we're challenging, and the fact that there's nothing in the specific questions that the commission issued earlier this year with respect to the new consolidated data plan. I mean, to the contrary, the commission made very clear in its order and in the new consolidated data plan order inviting comment that one of the things it's inviting comments on in terms of compliance is whether the proposed plan complies with the governance order that's at issue here, because the governance order's requirements are the baseline. Let's go through some of these other documents. I'm sorry? The commission's order denying a stay, it says that the order does not, the one you saw it stay in, does not establish a new consolidated plan. It requires them to exchange it as a file of a plan. Then it says the new consolidated plan filed in response to the order will itself be published pursuant to public comment with any changes subject to the commission that are necessary. Then it says that's why there's no injury here. That's why there's no harm. Yes, but the determinations at issue here are not part of what the commission is reconsidering. What it's considering is whether the plan that it required the SROs to submit, which itself imposed burdens on the SROs and therefore satisfies the second prong of benefit versus fear, and the commission is determining whether the plan that it forced the SROs to submit complies with the regulatory requirements that it imposed in the governance order. It's not determining whether to revisit those requirements. Those requirements are final. This is just like the domestic securities case in which this court held that where the first determination by the commission imposed certain requirements and approved certain provisions, but made implementation contingent on subsequent determinations. Then the subsequent determinations were made at a later date and promulgated by the commission. Someone wanted to challenge the original determination approving the first part of the plan. This court said, no, you're too late. That's because in that case, the new trading rules, including the ones that were challenged, were final. It's different from this case. The commission has said they've invited comment. One of your arguments is that the new voting procedures that the exchanges were required to include in their plans violate the statute. Yes. The commission has said that's what they're seeking comment on. No, Your Honor. The commission is not seeking comment on whether the requirements that imposed the last time around violate the statute. It's seeking comment on whether the plan complies with the requirements it imposed the last time around, because those requirements are final, just as the commission said in its own brief. The commission is not reconsidering. You're not going to get anywhere by relying on the commission's brief. The question here is, what has the commission said in its various public announcements and published in the Federal Register? You may say that the commission is asking nothing more than whether or not the plans that were submitted were consistent with the commission's prior order, but that's not what it says. It says whether it's consistent with the statute. It asks that question. But what is the it, Your Honor? The it is the plan, not the provisions, not the requirements that the SEC itself has already determined are consistent. Again, in the domestic securities case, the original order was not final in the sense that you're envisioning it. It didn't have any effect. It couldn't be implemented because the commission said, well, this is fine as far as it goes, but we need more before we are willing to implement this new plan. And so the commission required additional proceedings, issued an additional order. And that second order was the only one that gave legal effect to the first set of provisions that it had approved in the earlier order. And nonetheless, this process, the first order was... Let me ask you this. So if you really think that the SEC has already made a final judgment that the disputed features must be included in the final plan, why did NASDAQ file its brief in this case as one of its comments in response to the proposed plan? And it said, it said, you said, or NASDAQ said, all the statements set forth in NASDAQ's letters and in the opening brief and in the opening brief filed on behalf of NASDAQ in the court of appeals attached as appendix D are incorporated herewith by reference. For all the reasons stated therein, including this brief, the commission to disapprove the proposed plans. I mean, your own filing suggests that all of these issues are open. I'm sorry, Your Honor, if you're suggesting a filing connection with the current comment period. Yeah. So I don't know, but I assume the reason is that the... What do you mean if I'm suggesting it? I was reading you from NASDAQ's response to comments. NASDAQ's own comment, which submitted your brief in this case and said that for all of the reasons set forth in this brief, the commission should not adopt these proposals. I'm sorry. I was just trying to make sure I understood what you were asking about. As I say, I'm not, I'm not familiar with the rationale for that, but I assume that it's a belt and suspenders approach because of concerns. I mean, again, in the domestic securities case is actually quite instructive because they're the party weighted... Wait, wait, hold on. Hold on. I didn't understand your answer to my question. Sorry. I'm sorry. I just didn't understand. Before you go to domestic security, which looks to me to be a different case. So whether domestic securities is relevant turns on the issue you and I are discussing, whether or not this is final or not. But I didn't understand your answer to my question about why NASDAQ submitted the brief in this case to the SEC. And as I say, I don't know the answer to that question. Well, I can assure you that we think it is final. That's why we... Come on. I know that's what you're saying, but why would NASDAQ have submitted this if it didn't, if it thought it was final? That's my only question. Well, because litigants and and participants of administrative proceedings often take belt and suspenders approaches, but that doesn't change the fact that this order imposed real world obligations and costs and burdens on the regulated entities. They had no choice. They would have been subject to sanctions, regulatory sanctions, if they had not complied with the obligation to go through the cost and burden of developing a new consolidated data plan proposal to submit to the commission. And if they had not complied with the final determinations of the commission in the governance order that required them to include the three challenged features, which the commission has made very clear it's not reconsidering and didn't invite comments on in the subsequent order asking for comments on whether the proposed plan complied with their previously imposed governance order requirements. Again, it's final. It imposed real world burdens on the commissions, excuse me, on the SROs, and it is therefore reviewable. One of your arguments, Mr. Hunger, is that if you had not filed a petition in this case with respect to this particular order, you would have been barred from challenging it later. It's your position, right? That's correct, your honor. But doesn't section 704 of the APA take care of that problem? Section 704 says that intermediate agency action or rulings can be challenged upon a review of the final agency rule. This is an intermediate rule, no matter how you look at it, because it's not giving you the ultimate plan. That's yet to be decided. And so why doesn't 704 take care of your problem? Let me give you a hypothetical, and I don't want to argue back and forth, but tell me how you distinguish this, because I think of this case in somewhat the same way. Let's assume an action for an injunction, and the district judge rules that the defendant is liable and then says that I want you to get together with the plaintiff and propose a plan with the following elements in it. Now, is that immediately appealable? As a final action? If the judge has not entered an action. It would not be. So how do you distinguish that situation from this? Because the commission is not just a negotiating party, it's a regulatory agency with authority, and its governance order imposed immediately effective obligations on the SROs that they had no choice but to comply with. That's the same thing as in the hypothetical, the district judge imposed obligations to formulate a plan with the following elements, it's the same thing. So let me be clear, counsel, your reading of our precedent in domestic is that whatever happens afterward is unrelated to the substance of the elements that the commission has identified in the rule you're challenging, must be part of the plan. That that is not going to change at all, even if the commission were to find that there are legal obstacles ahead? That's correct, Your Honor, because the commission has not invited comment on the order them to include in the proposed plan, it's invited comment on whether the SROs have successfully have have properly implemented those obligations, which is a very different question. And going back to the injunction, if I if I've answered your question, Judge Rogers. Please. Please go ahead. I haven't come back, but going back to the injunction hypothetical, again, it's quite different. And this court's it was hardly a mirrored kind of instruction to go work things out. The governance order goes very carefully after notice and comment goes very carefully through each of the objections, or at least some of the objections, because they didn't address all of them. But they go through the objections to the to the three requirements that the SEC had proposed. They resolve them, express their final determinations that those requirements are must be part of the plan, and must be satisfied by the SROs in the plan that they're going to approve, submit for approval. So it's just like the domestic security case where the original order finally determines the matters that it addresses, but it leaves implementation and final implementation of the overall plan to a later proceeding where additional issues are going to be considered. So if, as this court held in domestic securities, the petitioner was barred, because they filed only after the second implementation order. I think that's a complete answer to the question about the APA section 704. Because even though under the view that has been suggested, you could say the original order was was an interim order in the sense that the implementation came until came later, this court nonetheless held it was final for purposes of its review because the issues that the original order addressed were finally resolved. And the same is true here. Why? Let me just follow up on Mr. Hunger on Judge Randolph's question to you about your concern that if you waited, you would you would not be able to challenge them. He mentioned 704, but which is true. But what about also wouldn't you be fully protected if this is a hypothetical? If we if we decide this is not final, and we say in our order, dismissing the petition that we like jurisdiction because the order is not final, aren't you fully protected? When the commission issues its final standards, you will be free to challenge all aspects of this because the Court of Appeals will have already ruled that this was an intermediate order not subject to judicial review. Well, that's true, Your Honor, but that but that completely protects you, doesn't it? In other words, did you see my point? Yes, Your Honor, that is true. I mean, you've done your due diligence, you know, with one way to look at this is, okay, you weren't sure about whether this was final. So you did your due diligence, you filed the petition, right to protect yourself. And maybe you were wrong about that. But you're totally protected by a Court of Appeals order, saying this is a non final intermediate decision, not subject to challenge. Yes, that's true as a legal matter. And obviously, as a practical matter, it would have been it would in that hypothetical, which we obviously resist, it would be a huge waste of resources, and not just for the SROs, but for the commission, because then the commission is going to be forced to go through the final decision making process on the other issues, not the issues that is an issue here, but completely different issues that is currently issue a final order on the new consolidated data plan, and then only then find out whether it actually had the legal authority to confer authority on non SROs that we have, we have hundreds, we have hundreds of cases in this court, where this court has concluded that agency action was intermediate and not final where you can make that exact same argument. Yes, it's a consequence of this statute and the APA's requirement that we review only final orders. I hear your point, it's a consequence of that, right? Well, but as I've attempted to argue, this court's precedents do not compel that result. And domestic securities points clearly in the opposite direction. And this court has also indicated that finality is to be evaluated in a flexible and pragmatic manner. Here, it makes no sense, given the final determinations that the agency has already made, and that are properly before the court, for the court to kick this back to the agency and delay things and decline to provide clarity to the regulated community on these important issues. So let me ask you, you heard some questions saying, well, domestic securities is a different case. There is language in domestic securities, to the effect that quote, the condition was unrelated to the substance of the super montage rules. So here, I'm trying to understand, is the same situation true here by analogy to, for example, and this analogy may fail, I understand, and you can come up with a better one. But I'm just trying to think of where a decision is made by an agency to do x, but it doesn't fully know what happens after x. And there may be other issues that come into play, but the agency decides it wants to decide these issues now. So what is the best argument that that's not piecemeal, piecemealing the issue such that we don't have a final order here. In other words, the commission says, we want the plan to include four elements. Now, once we get those plans, there may be other issues that come to bear. And that happens all the time in these agency cases, where the agency may adopt some of your objections, but reject others, and it goes ahead and issues the final plan. I guess what we're trying to understand is when is your argument that the issue as to what may come in the future is simply not relevant here to what the commission had decided it wanted to be a part of the plan? I think so, Your Honor, in the sense that the elements that the commission determined in the governance order must be included in the plan are not an issue in the subsequent proceedings, just like in domestic securities. Well, in domestic securities, as you know, there are certain sentences that appear to be different than the status of this case. And I need to understand why you think either it's not or if they are, they shouldn't be persuasive here. Because they say that, you know, we said to be sure the SEC did condition implementation of super montage on the approval of an adequate ADF. But it said, or we said, that this condition does not affect the finality, because the condition was raised in our order, not addressing something that is related to the substance of the super montage rules. You're saying, as I understand the colloquy, that, well, the commission said, it had made a final decision as to these three elements. But is that totally responsive? Well, I think so, Your Honor, because, again, in the, in the case, the commission had approved the super montage rules of the super montage plan and proposal, just like it has here approved the challenged element. But it said, but we need basically an alternative system to complement what we've approved. And we're going to withhold implementation unless and until that, that alternative system is approved, and is implemented and approved. And then we will implement the super montage as well. The same is true here in the sense that the commission has finally determined the elements at issue, the three challenged requirements for any plan that is to be implemented. But it has said, we're going to examine additional separate issues in the in the current ongoing proceedings to determine whether the plan, in other respects, satisfies the requirements of the Act. And once it does that, it will implement the plan, including the requirements that it has previously imposed at the governance order. So I think it's the same. I think it's the same thing. And it's very parallel. Well, I think maybe some of our questions suggest that understanding that is maybe upon further examination clearer, but there, you're saying the analogy, where arguably, it was stated that the commission was breaking up the matter into two parts. You're saying, even if that's true here, we've already decided that that doesn't defeat finality. I think so, Your Honor, I mean, maybe this gets at your question that it's not as if the, the, commission imposed in domestic securities were completely unrelated and had nothing to do with the, the provisions that it had approved in the initial order. I mean, there were, it was an alternative system for trade execution to, to go hand in hand with, as I understand it, with the super montage system to make sure that the, that investors and the regulated community had the full range of options that they needed in order to execute trades. And so it's not that they were totally unrelated. It was an additional piece of the puzzle that the commission felt it needed to address before it would allow implementation of the super montage aspects approved in the original order. And yet this court said the original order was final when issued because that was not what the commission was, was reconsidering and determining how to in its second, in the second order, it was simply addressing other issues, which then once they were finalized, allowed it to implement its previous determinations in the super montage underlying order. And again, that's precisely what's going on here. The commission is not reconsidering the determinations and requirements that it imposed on the exchanges. Indeed, I think this is the finality argument here is more substantial than it was in domestic securities again, because the governance order imposed real world obligations on the exchanges, forcing them to develop and submit a plan on an expedited basis at significant cost and burden. And so what's your best response then to these more recent statements that Judge Tatel was discussing with you? Well, again, if you, if you read the full list of questions that the commission promulgated and invited comment on, none of them has to do with the requirements it previously imposed in the governance order to the contrary. It's saying in substance, obviously I'm paraphrasing, but saying in substance, obviously the requirements of the governance order are the baseline. They're, they're going to stick. And we want to know whether the proposed plan satisfies all of the requirements of the act and the regulations and the governance order, not whether we should reconsider the requirements we imposed in the governance order. So again, there's no way, shape or form in which the commission has invited comment that would about whether it should reconsider its determinations in that previous and final order. So do you understand some of the questions perhaps to indicate a reluctance to allow this type of splitting of actions or by agencies? Well, I'm certainly getting that impression, Your Honor. No, but I'm trying to understand a lot of the cases we hear involve big issues and you can't decide all of them at once. And we often, and I think the Supreme Court authority have said, you know, the agency doesn't have to address everything related to a particular issue in one rulemaking. It can decide it only wants to address part and it may or may not come back to the issue later. So we haven't seemed to have a problem with deferring to the agency's determination of what it wants to address now and the manner in which its docket is developed. And I think that's why both parties in this case may have emphasized the real world consequences now, even though later adjustments may either affect, but not so far as we can tell from what the commission has indicated its interest in so far redo what you referred to as the baseline here for the plan. Well, I mean, I don't see how that could be possible, Your Honor, in terms of since they're not going to reconsider the requirements they imposed and the requirements they imposed are very clear, right? Non-SROs are given authority alongside SROs to do what Congress said only SROs can do. And the voting requirements are very clear, albeit unlawful, and the independent administrative requirement itself is also very clear. So it's not as if there's ambiguity in the final determinations that the commission has made. And again, since we're talking about the first prong of the Bennett versus Speer test, which is whether the order marks the consummation of the agency's decision-making process, this court's cases and the Supreme Court's cases ask whether the agency's determination under review constitutes a definitive ruling, whether the agency's ruling is not tentative or interlocutory. That's the test that this court's cases and the Supreme Court articulates for the first prong of the SROs. And the answer to those questions are clearly that the SEC has ruled definitively and has not issued a merely tentative or interlocutory ruling on the questions at issue here. And therefore, it satisfies the first prong of Bennett versus Speer. And there's no question that it satisfies the second prong as well, because again, as I've articulated, it imposed real-world obligations on the SROs on payment of sanction if they didn't comply. And what do you do with our decision in Ray Murray Energy, where we said an agency statement about its legal authority to adopt a proposed rule is not the consummation of the agency's decision-making process, but only represents a proposed rule in law? Because, Your Honor, that was a statement in a notice of very definition is tentative and inviting comment and consideration for the commission later to determine or the agency later to determine what the answer is. It imposed no legal obligations, as this court said in Murray, so it didn't satisfy the second prong of the Bennett versus Speer test and could not be final. And moreover, it was by definition tentative. This order, on the other hand, is not the beginning of a notice and comment proceeding. It's the end of it. The commission issued a proposed order. It invited comment. Comments were submitted. The commission considered them and addressed some of them in its order and issued a final order resolving the issues that we are raising here. So it's quite different from Murray, where, of course, a mere statement in a notice of proposed rulemaking, which has no legal effect and by definition is tentative, doesn't justify the invocation of this court's review authority. This is obviously the end of the process, not the beginning. And again, the only reason that we're having this discussion is because the commission has not yet implemented in terms of the final plan, the requirements that it imposed in the governance order. It did implement them in the sense of requiring the SROs to act pursuant to them, which again, why in our view, this was an easier case than domestic security is not a harder one. Would you like to address the merits briefly? Yes, Your Honor. I'll be brief. So first of all, with respect to the first issue that we raised, the text of section 11 A, A3B is clear. Congress gave the commission authority to authorize or direct SROs to act jointly, not any other entities. It doesn't make any sense to suggest that Congress intended through silence to let the commission extend that authority to others. Because first of all, Congress made clear that act jointly authority was conferred upon only the SROs. This is the only provision in the Exchange Act that talks about acting jointly and it's limited to SROs. And the statute itself makes clear the reason why SROs are the congressionally intended beneficiaries of this unique authority to act jointly is because they and they alone share authority under the act to do the things that allow them to participate in operating the national market system plan. Non-SROs have no such authority. The commission is essentially arrogating to itself the power to transfer authority that Congress gave the SROs to non-SROs under the guise of a provision that refers only to SROs. It makes no sense and it violates the structure and purpose of the act because in, as a quid pro quo for giving SROs regulatory authority, Congress imposed on them unique obligations and responsibilities, including the obligation to protect investors and act in the public interest and to be subjected to direct regulatory oversight by the SEC, none of which applies to the individual representatives that the SEC is trying to shoehorn into this body. So for all the reasons set forth in the brief, the conferral of voting authority, regulatory authority, if you will, on non-SROs is completely contrary to the structure and text and purpose of the statute. The jury, the gerrymandered vote dilution scheme that the commission has imposed on SROs also violates the statute. The commission itself admits that section 11a a3b requires it to ensure that the SROs have sufficient voting power to act jointly on the behalf of the plan pursuant to the requirements of section 11a and yet it fails to do that because a majority of the SROs can't even act jointly because they can be overridden by a minority of the SROs and the vote dilution scheme that treats multiple SROs as if they were a smaller number than they actually are, which is contrary to the statute's definitional provision, which makes clear that each exchange is its own independent SRO. It's also inconsistent with the commission's own long-established regulatory practice, which it provided no reason to explanation for departing from and it's inconsistent with this court's case law, including the Lilliputian systems case, which precludes agencies from discriminating among similarly situated entities without evidence and a reasoned explanation and here the commission failed to explain why it is limiting the votes of affiliated SROs while not limiting the votes of unaffiliated SROs that face the same alleged conflict of interest that the SROs face. And finally, with respect to the independent administrator requirement, the commission failed to assess whether that requirement, which imposes admitted costs and burdens, will do more good than harm. Their only explanation was the sheer speculation about the potential for conflicts of interest, but they made no findings and pointed to no evidence of any real-world harm, let alone explain how that overcomes the costs that the commission's rule is imposing. Again, the rationale is internally inconsistent and discriminatory because the commission allows non-SRO data vendors to serve as the administrator, even though they face precisely the same alleged conflict of interest that the commission attributes to the SROs. The commission provided no explanation for that discriminatory treatment, which therefore violates the Lilliputian system precedent that I mentioned before, and the commission failed to consider the fact and the significance of the fact that it has contemporaneously imposed heightened confidentiality obligations on the SROs and the administrator, which go to the very alleged problem that this requirement purports to address. So for all those reasons, the independent administrator requirement is arbitrary and capricious, and the governance order should be vacated. All right, thank you. Thank you. Let's hear Council for a respondent. Thank you, Your Honor. Tracy Harden on behalf of the Securities and Exchange Commission. As we indicated in our supplemental brief, we do agree with the petitioners that this final agency action is subject to review at this time. It is the consummation of the commission's decision-making process. As Council for Petitioners pointed out, there has been notice and a comment process here, and the commission made a recent determination that it's both in its authority and appropriate to proceed along these lines at this point. And I think this court's precedent makes clear that the fact that something could be is not sufficient to render something non-final. And that's precisely the situation we have here. I think also this court has, and the Supreme Court, have both taken a pragmatic approach to questions of finality. And here we have a situation where a decision by the court at this point could in fact provide clarity to the parties going forward, and it would serve the interest of both judicial efficiency and the efficiency of effort by the parties here. Moving on to the merits, if the court has no questions. Well, would you like to respond, Counsel? Excuse me. Before you do that, would you like to respond to some of the colloquy that you have just heard, in particular, are referencing more recent statements issued by the commission? Yes, and just to follow up on Judge, let me just call your attention to some very specific statements by the commission, okay? And let's start with the most recent. The January 15th order on whether to approve the proposed, seeking comments on whether to approve the proposed plan. And it specifically asked whether the proposals are consistent with Section 11A, as well as, quote, any other concerns they may have with the proposal. And then it said, institution of proceedings does not indicate that the commission has reached any conclusions regarding any of the issues involved, okay? To me, that says it's not final. Your Honor, I have a couple of responses to that. First, the question about consistency with Section 11A of the Act, that is part of the approval process of an NMS plan under Rule 608, the commission. Yeah, but that, but excuse me, but that is the primary argument that the petitioners are making here. The petitioner's primary argument here, which is a strong argument, is that including the non-SROs violates the statute. And the question the commission has asked here is whether the proposals are consistent with the statute. So I think it's important to separate in this analysis the questions of the commission's order here, the governance order, which is subject to this petition for review and the plan itself. We can see the plan itself is not final, and that's true. Right, I understand that. I understand that. But I'm asking you the question about what the commission said in the order I just quoted from, where it says two critical things, it seems to me. One, we're asking for comment on whether the proposals are consistent with the statute. And number two, anything, any final order will be subject to notice and comment. And that's just the first I want to add. That's the last of the orders. I want to ask you about the others. But I didn't see any, maybe I missed it, but I didn't see anything in that order which said that when the commission asked for comment on whether or not the proposals comport with the statute, that it wasn't referring, for example, to the inclusion of the non-SROs or to the creation of the independent administrators. It doesn't say that explicitly. You're right, your honor. The rule 608 approval standard that the commission has to find to approve a plan includes finding whether the plan is otherwise in furtherance of the purposes of the act. And so the question here is going to whether the entirety of the plan is consistent with the act, not specifying any particular provisions. And it's true that the commission has discretion to change its mind. That's always true in an administrative context. But the commission, as I said, made a very extensive recent decision here. And to change its mind on these provisions would be subject, of course, to APA principles of recent decision making and explaining that change. And there's nothing to indicate in this record that there's a serious or a, you know, a real reevaluation of that going on. Of course, the commission retains that discretion. I'm just curious. Maybe you don't have to answer this if you don't want to. It's going a little beyond your brief. But I'm not quite sure I understand why the commission is taking this position. I would assume that the commission's view would be that it's in a much stronger position, would be in a much stronger position to defend its ultimate decisions here if we let the regulatory process go to its conclusion. I mean, what is it about this case that seems to make the commission want to get a review now as opposed to later? I think there's nothing in the commission's determination on these particular issues and the order that's before the court now that's contingent upon anything that is going to play out or could change in the approval process. This isn't a situation where the issues are so interrelated that there's a ripeness concern. OK, let me ask you about a few of the other of these documents. OK, so the governance order. OK, one of the comments that the commission responded to said that the SEC's rationale for making governance changes relied on what they call cherry-picked opinions. In other words, they challenged the legality of that. The commission said the new consolidated plan submitted in response to this order will itself be published for public comment prior to any decision to approve or disapprove the plans with any changes or subject to any conditions the commission deems necessary or appropriate. So in response to an argument that the commission's rationale for requiring some of these requirements was flawed, the commission said, don't worry about it. The final order will be subject to notice and comment rulemaking. What the commission said before that, Your Honor, was that it published this order for comment prior to issuing the order, making the determinations it made. And I think that the totality of the commission's response here was to an argument that we haven't had sufficient time to comment on this. And the commission is saying, well, wait a minute. We've looked at these issues since at least 2015, since we established the Equity Market Structure Advisory Committee. The commission has been looking at these issues for years. We published this order for comment. We think we have sufficient information to proceed now. And to the extent you have concerns about that, there will be a post hoc process for approval as well. All right. And OK. And what about the... So the exchanges asked for a stay before the commission. The commission denied it, right? And it said very clearly in it, the order does not establish a new plan. It requires the SROs to file a plan with the commission. The new consolidated data plan submitted in response to these will itself be published. Same thing. They said, don't worry. We're going to deny a stay because nothing we've done so far is final. Through that process, interested parties will still be able to comment on the proposed plan. And the commission will review the plan and may make changes or add conditions before issuing a subsequent order approving or disapproving the plan. The commission in that order was responding to the irreparable entry argument that had been made in the state papers filed before it, in which the petitioners included harm stemming from implementation of a new data plan. And so the commission is saying here, in part, those harms are not going to come to pass here. And a stay is not required at this point to prevent that kind of irreparable entry. And certainly, any cost of implementation of a plan will, in fact, be affected by the details of that plan. And so in addressing the entry argument before it, I think it was perfectly appropriate for the commission to recognize that the plan is not going to be implemented at this point. And the details of that plan are still to be sorted out in a later proceeding. Thank you. If the court has no further questions about finality, I would like to turn to the merits. I think, you know, Section A3B of the Act authorizes precisely what the commission did here. It required joint action by the SROs with respect to an aspect of the national market system over which they share authority. And here, that aspect of the market system, the equity data plans, were created to further Congress's goals with respect to market data, as expressed both in paragraph A1 of the provision and in paragraph C. And contrary to the petitioner's argument, this grant of authority is not a clear indication that Congress intended to best sole decision-making authority over the national market system to SROs. This court's case law makes clear that the expression canon doesn't get you to a clear indication of congressional intent when the provision is juxtaposed against provisions providing an agency flexibility. Well, before you get to express your use, I'm just looking at the statute here. The statute says an agency only has the authority Congress gives it, right? We all agree with that. So in furtherance of this directive, the SEC may, OK, authorize or require self-regulatory organizations to act jointly. OK. It says self-regulatory organizations, not non-self-regulatory organizations. And then it says, with respect to matters as to which they share authority under this chapter, which doesn't apply to non-SROs. I mean, I don't, I don't, the statute looks clear to me. I don't see where the commission, true, it doesn't say anything about non-SROs, but it seems to say that, not seems, but what it says is the commission has authority over NSROs with respect, with respect, with respect, with respect to matters as to which they share authority under this chapter, including all these things that NSROs have no authority over. I mean, I don't, I don't get where the commission gets authority to include non-SROs who have no such authority. Sorry about that. Yeah. In other words, Chevron won. I understand, Your Honor. And I would point out that that provision actually doesn't define the matters over which joint action can be required. What it does is leave those matters to be fleshed out. Well, it does. It says as to which they share authorities, planning. Anyway, go ahead. I didn't mean to interrupt you. Go ahead. But what those matters are and what the joint action is, are not fleshed out in this provision. And you can't look at that provision in a vacuum because here, the aspect of the national market system over which they share authority is the equity data plans, which, as I said, and as the commission said in this order, were created to further the purposes of 11C. And 11C not only is a grant of broad discretion to the commission with respect to market data, but it also, in its language, contemplates the involvement of non-SROs. So if you look at that provision, it expressly mentions brokers, dealers, and securities information processors. So if you go back to Paragraph 3B, it also expressly refers back to Paragraph A2, which is the directive to the commission to facilitate the establishment of the national market system. That, again, is a flexible grant of authority and refers back to Congress's objectives in A1. Those objectives in A1 also contemplate the involvement of other market participants in the national market system. There are other indications in the language of 11A as well that the SROs are not meant to be the sole decision makers in this space. You look even at Paragraph D3, which the petitioners point to. This is the market advisory board. If you look to subparagraph 3 in that provision, it says the board is to consult with SROs, yes, but also issuers, investors, brokers, dealers, and securities information processors, and, quote, other persons interested or likely to be involved in the establishment operation or regulation of the national market system. I think the petitioner's argument really hinges upon taking A3B in a vacuum, and by its terms, it can't be taken in a vacuum. It is part of a statutory scheme, which does provide flexibility to the commission, provides the boundaries of that flexibility in order to facilitate the national market system and ensure it develops in accordance with Congress's defined objectives. This is precisely like the cases in which this court has said that the juxtaposition of a provision in a larger statutory scheme that provides flexibility to the agency is not a situation in which a sparse openness can give you a clear indication of congressional intent. It is at least as likely that Congress meant to leave this decision to the commission, and that's particularly true because there is an alternative explanation for this language here. This is the antitrust concerns that were clearly present at the time of enactment and would be present with joint action by self-regulatory organizations in this space. And in that situation, we think it's appropriate for the court to move to Chevron 2 on this question. And there, again, the context and the history of the statute show that Congress at least contemplated the involvement of non-SROs in the decision-making in the national market system, and that it intended to provide the commission with flexibility here. Nor do we think that this action is barred by Rule 608. The commission did address this both in the proposed order in which it explicitly said that 608 does not bar the involvement of non-SROs, and in the approval order, it recognized that these comments were going to be raised, had been raised again, and disagreed with the argument that the inclusion of one group in a Statute 4 regulation precludes the involvement of others. And to the extent more is needed, the stay order makes very clear that the commission does not interpret Rule 608 as barring its action here either. Turning briefly to the voting structure, the exchange group voting structure that the petitioners also challenge, there's nothing in the Act Jointly provision that unambiguously requires majority voting control by individual SROs, which is what they're arguing here. It's not about control at all. In fact, Rule 608 recognizes that two or more SROs can act jointly with respect to an NMS plan, and there's nothing in the Exchange Act definition of SROs which guarantees an NMS plan, nor do we think that this is an inappropriate or insufficiently explained departure from commission practice. The commission has treated corporate affiliation differently depending upon the circumstances, but more importantly, it sufficiently explained its decision here, explaining that there's both a legal and a factual distinction here between situations in which SROs have been treated individually. When SROs or exchanges are operating their individual marketplaces, they have individual regulatory responsibilities, and it's appropriate for the commission to treat them separately, but that's not true when they're acting jointly pursuant to an NMS plan. The commission found that that legal distinction, combined with the undisputed fact that the exchanges are acting as a collective organization here in voting as blocks on the operating committee of an NMS plan, justified treating them as a collective organization for purposes of voting power. The other thing I would note is the commission did not conceive this interpretation, and as petitioners argue, this court's precedent is very clear that it's to look to the totality of an agency explanation and not parse individual sentences, and the commission's order here explains that it was making a policy choice to balance the desire for increased non-SRO participation against the regulatory responsibilities of the SROs and ensure that the SROs maintained a majority vote. The commission, in fact, responded to comments suggesting that greater voting power for non-SROs, including majority voting power for non-SROs, not by saying it lacked authority to make that change, but by saying it thought it was striking the appropriate balance at this time, and I think the sentence that the petitioners point to is best read as consistent with that in a few different ways in a few different places in the order, making clear that it's making a policy choice and saying that it wanted the SROs to have the ability to assure that the plan meets the requirements of Section 11A and Rule 608, not that those provisions required only SRO control. Turning briefly to the independent administrator requirement, it's both reasonable and reasonably explained here. The petitioners don't deny the obvious conflict of interest that exists if you have an administrator with access to confidential proprietary information, both operating the public data feeds and selling its own proprietary data products. They argue that there wasn't sufficient evidence of harm here, but the commission is entitled to act prophylactically, and it did that here based upon concerns that have been expressed by a number of market participants across a broad spectrum of roles in the market, both at the roundtable it held in 2018 and in the comments before the commission. Here, sufficient concerns were expressed to justify the reasonable step of ensuring that the administrator is not wearing two hats here. With respect to the consideration of balancing the harm and good that comes from this requirement, the commission did consider that, it considered and recognized the costs of shifting to an may not be as great as were asserted, and it reasonably concluded that the benefits of eliminating the conflict justified those costs. But the petitioners have not pointed to any information and certainly not any data that the commission failed to consider on this point, and the commission did expressly ask for comments on the economic consequences of its order. All right, can we rely on your brief for the rest of any argument? Yes, Your Honor, thank you. All right, any questions from my colleagues? No, no. All right, thank you. So, counsel for petitioner, give you a few minutes. Thank you, Your Honor. Just very briefly. Many of the arguments from opposing counsel are essentially post hoc arguments of counsel as opposed to statements actually found in the agency's order. Just touching briefly on the first issue, a few points I think merit a response. Counsel cited sections 11A, A2, and 11AC as alleged support for the commission's decision to grant authority to non-SROs. Neither of those provisions even addresses the question of conferring SRO authority on non-SROs. They certainly aren't in any way inconsistent with Congress's specific determination in that they are the only entities that have the authority that Congress gave them under the statute. 11A, A2 cited by the commission in its order doesn't actually confer any authority on the commission at all. It's a directive, a command to the commission to exercise other authorities such as 11A, A3B to implement a national market system. It doesn't convey any authority separate and apart from other authorities, so it does nothing for them. As I mentioned, 11AC doesn't confer any authority with respect to the specific issue addressed here and indeed was not even cited by the commission in its order. Counsel pointed to 11AD, but that supports us because it's true. It refers to non-SROs and confers upon them a potential role in the SEC's discretion, but the role it gives them is expressly, quote, advisory, close quote, which is, of course, directly inconsistent with what the commission has done here by conferring actual authority on their representatives. Finally, the antitrust argument that counsel made as an attempted explanation of why Congress spoke to SROs in section 11A, A3B, there's no indication that that was even why Congress acted in this manner. The commission points only to a stray comment in a committee report from years before the legislation that issue. But even if that was one of the motivations, it provides no support for what the commission did here because, of course, the commission has conferred authority on other participants in the securities markets, including broker dealers, who also would have competitive antitrust concerns with being allowed to act jointly. And so if Congress thought that it was necessary to expressly authorize the SROs to act jointly in order to eliminate antitrust concerns, its failure to convey that same exemption on the non-SROs simply confirms that the non-SROs are not permissible beneficiaries of this authority. But doesn't that argument lead to the proposition that non-SROs, broker dealers, will not go up for election to be on the commission? Now, if they're going to suffer antitrust liability, they won't participate. Well, I mean, again, we're not suggesting that this is why Congress imposed this provision because, I mean, the Supreme Court, even absent a provision like this, the Supreme Court had made clear that there's an antitrust exemption for things that the commission can authorize people to do. So I'm not sure that. But in any event, even if, as I say, even if there were some antitrust concerns, but for the commission's authorization, that wouldn't justify extending the scope of 11AA3B to entities that Congress didn't include within it. So they're using it just as an interpretive tool. Correct, Your Honor, or really responding to their attempt to use it as an interpretive tool, the shoehorn non-SROs. Got it. So for all these reasons, we ask that the order be vacated. Thank you, counsel. Take the case under advisement.
judges: Rogers, Tatel, Randolph